UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

```
ROSA L. McNEIL, INDIVIDUALLY,      :
and as ADMINISTRATIRIX of the      :
ESTATE of MARRIE LINDA McNEIL,     :
                                   :
        Plaintiff                  :
    v.                             :   CIVIL NO. 3:CV-05-925
                                   :
                                   :   (Judge Conaboy)
COMMONWEALTH OF PENNSYLVANIA,      :
ET AL.,                            :
                                   :
        Defendants                 :
```
_____

**MEMORANDUM**
**Background**

This civil rights action was initiated in the United States District Court for the Eastern District of Pennsylvania by Rosa L. McNeil (Plaintiff) regarding the death of her daughter, Marrie Linda McNeil (Decedent).[1]  At the time of her death, the Decedent was a prisoner confined at the State Correctional Institution, Muncy, Pennsylvania (SCI-Muncy).  The matter was subsequently transferred to this Court.

By Memorandum and Order dated January 20, 2006, this Court granted dismissal in favor of Defendants Commonwealth of Pennsylvania; the Pennsylvania Department of Corrections (DOC) and SCI-Muncy with respect to the Plaintiff's federal claims.

---

[1] McNeil also asserts pendent state law tort claims against the Defendants.

1

On March 10, 2006, summary judgment was entered in favor of Defendants Lycoming County Coroner's Office and Deputy Coroner Charles Kesling, R.N. with respect to the Plaintiff's federal law claims.

The remaining Defendants include the DOC's legal counsel, Randall N. Sears, Esq. and the following six (6) SCI-Muncy employees:  Superintendent Martin L. Dragovitch; Deputy Superintendent David Patton; Health Care Coordinator Kathryn McCarty; Counselor Sue Hartman; Correctional Officer Kelly Miller; and Unit Manager Al Smith, III.  Other remaining Defendants are John W. Nelms, D.D.S., Wexford Health Sources, Inc.[2] and the following Wexford employees: Craig Bardell, M.D., David H. Martin, P.A., and six (6) John/Jane Doe nurses (hereinafter the Wexford Defendants).

Presently pending is the first of three (3) motions requesting dismissal filed by the Wexford Defendants.  See Doc. 10.  The motion has been briefed and is ripe for consideration.[3]

According to the complaint, the 42 year old Decedent had been confined at SCI-Muncy for approximately 5 years and was "relatively healthy" when she was found dead in an SCI-Muncy

---

[2] Wexford provides health care services to SCI-Muncy inmates on a contractual basis.

[3] By Order dated March 15, 2006, Plaintiff was granted additional time in which to submit responses to the Wexford Defendants' pending motions to dismiss.  However, based on a review of the briefing already submitted, an additional response to the present motion is not warranted.

2

holding cell on the morning of July 4, 2002.  Doc. 1, ¶ 29. Plaintiff alleges that her daughter's death was caused by "willful, wanton and criminally negligent medical care." Id., ¶ 4.

Specifically, it is alleged that the Decedent went to sick call at SCI-Muncy on or about June 23, 2002 with complaints of swollen glands, severe pain in her throat, and difficulty swallowing.  In accordance with prison policy, the Decedent was not granted access to a physician, but rather, was required to make an appointment for the following day.  The inmate's throat was given a cursory examination by a Wexford employee, either Doctor Bardell or one of the nurses named as a John/Jane Doe Defendant.  Id. at 34.  She was diagnosed as having strep and prescribed some type of "antibiotic therapy."  Id. at ¶ 35. Although the Decedent's condition declined during the next 2-3 days her requests for medical treatment were purportedly denied.

On June 26, 2002, the Decedent had a pre-scheduled sick call appointment.  She was allegedly placed under the care of a dentist, Doctor John Nelms, who concluded that the prisoner had a ruptured wisdom tooth.  Doctor Nelms, who is not a Wexford employee, allegedly advised the Decedent that if he was going to extract the tooth he had to do so right away because he would not be returning to the prison for some time.  Plaintiff maintains that the Decedent informed Doctor Nelms of her strep throat diagnosis and expressed concern about undergoing the

3

procedure.  The dentist allegedly told the prisoner that her strep throat would not present any problem.  Doctor Nelms then performed the extraction of a right lower wisdom tooth and the extraction site was purportedly left open, unsutured, and exposed.  The Decedent was prescribed Motrin for pain.

Due to excruciating pain, weakness, and swelling to the right side of her face, the Decedent sought medical assistance the next day.  Once again, she was denied immediate access to a doctor under SCI-Muncy policy and was required to make an appointment for the next day.  The Decedent was purportedly seen by Doctor Bardell and/or one of the John/Jane Doe nurse Defendants on June 28, 2002 and told that she had an inner ear infection which required no further care since she was already on an antibiotic and pain medication.  She was allowed to remain in the prison infirmary overnight and was returned to her cell the following morning.

It is next asserted that between June 29, 2002 and July 1, 2002, Decedent's condition continued to decline.  She purportedly developed a foul decaying stench, was unable to perform any daily hygiene, and Defendants Miller, Smith, and Hartman (non-Wexford Defendants) ignored her pleas for medical assistance.  Despite those developments, her screams for assistance and requests from other inmates, Plaintiff claims that no medical attention was provided to the Decedent.

Thereafter, a fellow inmate signed the Decedent up for sick

call on July 1, 2002.  Since the prisoner was now unable to ambulate, fellow inmates physically assisted her to the appointment.  However, because she was already scheduled for a follow up appointment on July 3, 2002, the Decedent went untreated on July 1, 2002 and was returned to her cell.  During the next two days the John/Jane Doe nurses allegedly failed to provide the now non-ambulatory Decedent with any assistance and refused to permit delivery of previously prescribed medications to her cell.

On July 3, 2002, Plaintiff states that the Decedent was physically unable to attend an appointment with Defendant Doctor Bardell.  At one point, Defendant Miller allegedly stood in the Decedent's cell, observed her extreme distress yet failed to arrange for Decedent to be transported to her appointment with Bardell.  The complaint acknowledges that another unidentified correctional officer intervened and arranged for transportation.

When Doctor Bardell saw the Decedent, the physician purportedly "expressed the opinion" that the prisoner required no further medical treatment and had her placed in a holding cell where she remained untreated and unobserved until her death the following morning.  Id. at ¶ 77.  As relief, Plaintiff seeks compensatory and punitive damages.

### Discussion

On May 25, 2005, the Wexford Defendants filed a motion to dismiss "several allegations of the Plaintiff's Complaint" for

5

failure to state a claim upon which relief may be granted.  Doc. 10, ¶ 4.  Their motion seeks dismissal of any and all demands for punitive damages, attorney fees, and Count VII of the complaint for Plaintiff's failure to file a Certificate of Merit.

**Standard of Review**

A court, in rendering a decision on a motion to dismiss, must accept the veracity of the plaintiff's allegations. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990).  In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), the Court of Appeals for the Third Circuit added that when considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957).

"The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief." Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted).  Additionally, a court must "accept as true the

factual allegations in the complaint and all reasonable inferences that can be drawn from them." Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990); Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1168 (3d Cir. 1997).  Finally, it is additionally well-settled that pro se complaints should be liberally construed.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  This Court will now discuss the Wexford Defendants' motion in light of the standards set forth above and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**Punitive Damages**

The Wexford Defendants initially contend that Plaintiff is not entitled to punitive damages because the complaint fails to allege that their actions or inactions were intentional, reckless and/or malicious.  Plaintiff counters that it "would be hard to postulate a more outrageous set of facts, or one that shows greater indifference to the rights of an inmate."  Doc. 24, p 1-2.

A plaintiff, in order to state a viable civil rights claim under § 1983, must plead two essential elements;  (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

7

It was previously recognized that an award of punitive damages under § 1983 was appropriate when a defendant's conduct was shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. Coleman v. Kaye, 87 F.3d 1491, 1497 (3d Cir. 1996); see also Smith v. Wade, 461 U.S. 30, 56 (1983). In a subsequent ruling, the Court of Appeals for the Third Circuit reiterated the standard established in Smith and Coleman. Alexander v. Riga, 208 F.3d 419, 430 (3d Cir. 2000). The Court in Alexander added that punitive damages may be awarded in a civil rights case where a jury finds a civil rights violation even if it has not awarded compensatory or nominal damages.

As previously noted, in addressing a motion to dismiss, a court must accept as true the factual allegations in the complaint as being true. Based on this Court's application of Smith, Coleman and Alexander to the present complaint, the Plaintiff's allegations if proven could support an award of punitive damages. The Wexford Defendants' motion to the extent that it seeks dismissal of any and all requests for punitive damages will be denied.

**Attorney's Fees**

The moving defendants' second argument maintains that Plaintiff's request for attorney's fees should be dismissed because she "has failed to allege any statutory violations for

8

which attorney's fees are recoverable" and the parties have not entered into any agreement for the payment of attorney's fees. Doc. 10, ¶ 19.  In an opposing brief, Plaintiff notes that a prevailing party may recover attorney's fees in a civil rights action under the Civil Rights Attorney's Fees Awards Act of 1976.  <u>See</u> Doc. 24, p. 12.

Under the provisions of 42 U.S.C. § 1988(b) this Court, in its discretion, may award attorney's fees to a prevailing party in any civil rights action, including one brought pursuant to § 1983.  Consequently, the Wexford Defendants' motion to dismiss any and all of the Plaintiff's requests for attorney's fees will be denied.

## **Certificate of Merit**

The Wexford Defendants' remaining argument seeks dismissal of Count VII (medical malpractice) of the complaint on the grounds that Plaintiff has not filed a Certificate of Merit within the time frame authorized under Pennsylvania Rule of Civil Procedure 1042.3.

Since this argument is included in the Wexford Defendants' subsequently filed motion for dismissal (Doc. 36), it will not be addressed herein.  An appropriate Order will enter.

<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
UNITED STATES DISTRICT JUDGE

DATED:   MARCH 21, 2006

9

```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                    MIDDLE DISTRICT OF PENNSYLVANIA


ROSA L. McNEIL, INDIVIDUALLY,      :
and as ADMINISTRATIRIX of the      :
ESTATE of MARRIE LINDA McNEIL,     :
                                   :
          Plaintiff                :
     v.                            :    CIVIL NO. 3:CV-05-925
                                   :
                                   :    (Judge Conaboy)
COMMONWEALTH OF PENNSYLVANIA,      :
ET AL.,                            :
                                   :
          Defendants               :
```
_____

**ORDER**

ACCORDINGLY, THIS 21st DAY OF MARCH, 2006, IT IS HEREBY ORDERED THAT:

>   The Wexford Defendants' initially filed motion to dismiss (Doc. 10) is denied.

```
                         S/Richard P. Conaboy
                          RICHARD P. CONABOY
                          United States District Judge
```